Duer, J.
I will take the papers, and examine the authorities you have cited. My present impression is, that your application ought to be made to the supreme court. As the jurisdiction of this court is limited and defined by statute, it may be doubted whether we can exercise any powers, beyond those which are expressly given, or which are plainly necessary to the exercise of those which are given. Our process must not be issued, unless it is certain that we can enforce obedience. It must not issue, to be contemned with impunity. You shall have my decision to-morrow, October 20th.
Duer, J.
I am reluctantly compelled to deny this applica *678 tion for aid, which is addressed to the discretion of the court, on grounds of national comity and courtesy, and which, were it not for doubts in regard to my jurisdiction, I should cheerfully grant.
The superior court of the city and county of New York, is a court created by special statute, of local and limited powers, and it does not therefore occupy towards the courts of foreign countries, the same position with our federal tribunals, or the supreme courts of the several states.
Its constitution differs widely from that of the supreme court of this state, which possessed originally all the powers that belonged to the court of queen’s bench, on whose behalf these commissioners invoke our aid. As we remarked in Kanouse v. Martin, (3 Sandford’s Superior Court Reports, p. 653,) it _ is a remarkable fact that the powers and jurisdiction of the supreme court, as formerly organized, were not defined in either of the constitutions of the state, or in any act of the legislature, and from its first organization by the colonial legislature in 1697, excepting so far as its powers may have been restricted by statute, it has possessed the power, and exercised the jurisdiction, civil and criminal, appellate and original, of the court of king’s bench in the mother country.
Were this court possessed of the power of the supreme court as pro hac vice, in Kanouse v. Martin, I should have no hesitation in promptly acceding to the application ; but, as the case stands, I must decline to exercise a doubtful authority.
Our revised statutes, singularly enough, contain no provision, conferring upon our courts and judges generally, specific statutory jurisdiction in cases like this, to aid foreign courts in the execution of foreign commissions, by issuing process to compel the attendance of witnesses. Yet.there appears to be intrinsic evidence of a belief on the part of the revisers, that they had made such provision, and members both of the bench and of the bar have occasionally been misled into the like belief.
■ The fourth article of chap, vii., title 3d, third part of the revised statutes, is entitled, “ Of depositions taken in this state, to be used in courts of other states and countries,” but the body of the statute relates only to other states, and the 56th section (44) of article 6th, in the same chapter, provides particularly *679 for the service of summons, in all cases, “ where, by the provision of law, any judge or other officer is authorized to summon any person to appear as a witness, either before such judge or officer, to give testimony, or to have his deposition taken, or before any persons named in any commission issued by a court of any other state or country.” But no such provision of law is to be found in- the statute, and the authority referred to when exercised, must be exercised by virtue of inherent general powers.
Until therefore the legislature of this state, or the congress of the United States, shall supply the omission of our revisers, by the passage of an act, conferring upon our courts and judges of special jurisdiction, the power to aid, by their process, the execution of foreign commissions, such power can, perhaps, be safely exercised only by the federal courts, and state tribunals invested with general common law powers.
In regard to the federal courts, a precedent was established by Mr. Justice Washington, in the case of Nelson v. The United States, (2 Peters’ C. C. R. 236), which affirmed their right, and their willingness to issue their process in aid of a foreign court.
In that case, letters rogatory were addressed to the judicial authorities, praying the court or judge, by the proper and usual process of the court, to cause the witnesses to appear and answer, and the court expressly declared in conclusion, that they would be ready and willing to do the same for them in a similar case when required.
The supreme court of this state possesses, I presume, a like right, by virtue of its larger inherent powers, already referred to ; and that court will not be trammelled in considering such an application, by any doubts, arising from a restricted and limited jurisdiction, of their authority, to extend, to these commissioners of the court of queen’s bench the assistance they require.
In the principle, as stated by Professor Greenleaf, that, by the law of nations, courts of justice of different countries are bound mutually to aid and assist each other for the furtherance of justice (1 Greenleaf on Evidence, § 320), I fully concur; and I regard it as a principle, the propriety and necessity of which are likely to be felt with constantly increasing force as *680 the commercial relations of Europe and America "become more intimate and more numerous. The duties imposed upon us by national comity and courtesy, are illustrated and enforced by the advantages to ourselves, of the universal recognition of the principle, as a part of the law of nations, for our suitors are frequently liable to require reciprocal aid from the judicial tribunals of foreign countries, and our courts, without such aid, will find it, in some cases, impossible to administer equal justice.
If it then be their right and duty to aid foreign courts in the procuring of testimony, in reply to letters rogatory by the law of nations, they may certainly, by virtue of these intrinsic powers, in the exercise of a wise discretion, and a liberal courtesy, waive a rigid adherence to strict forms and precedents, and aid foreign courts by the usual and proper process. Even when no such letters have been received, the issuing of a commission by a foreign court may be reasonably considered, and accepted, as sufficient evidence of its wishes. It is plain that letters rogatory do not confer jurisdiction. They only supply adequate motives for its exercise, and its exercise is therefore equally justified in all cases, where the same motives, national comity, and the furtherance of justice, are proved to exist. The only difference between letters rogatory, and a commission, is, the absence in the latter ofoa formal request.
I do not wish to be understood as deciding that this court does not possess the power to grant the aid asked for, but as the application of the commissioners shows that they have instant occasion for assistance, to secure the attendance of witnesses, and as doubts have forced themselves upon my mind, touching my authority, based simply upon the more narrow statutory jurisdiction of this court, and as no such question can arise in reference to the power of the supreme court, I think it proper to recommend the applicants to invoke the aid of that court, which, if I am correct in the views I have expressed, will be unhesitatingly and cheerfully granted. (a)
Campbell, J., and Bosworth, J. concurred in the opinion, that it was not expedient to grant the prayer of the petition.

 A subsequent application was made to the supreme court, aud granted; and thus the commission, that otherwise would have failed, -was fully executed.